**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Progressive Northern Insurance Company, Appellant,

v.

Stanley K. Medlock, Corey K. Medlock and the Standard Fire Insurance Company, Defendants,

Of whom Stanley K. Medlock and Corey K. Medlock, are Respondents.

Appellate Case No. 2013-000923

———————

Appeal From Spartanburg County
J. Derham Cole, Circuit Court Judge

———————

Unpublished Opinion No. 2014-UP-270
Heard May 14, 2014 – Filed June 30, 2014

———————

**AFFIRMED**

———————

John Robert Murphy and Wesley Brian Sawyer, both of Murphy & Grantland, PA, of Columbia, for Appellant.

Brian Ashley Martin, of Brian A. Martin, LLC, of Greer, for Respondents.

———————

**PER CURIAM:** In this declaratory judgment action involving the availability of underinsured motorist (UIM) coverage, Progressive Northern Insurance Company (Progressive) argues the trial court erred in granting Stanley K. Medlock and Corey K. Medlock's motion for summary judgment. Specifically, Progressive contends the trial court erred by (1) failing to hold that Stanley's signed rejection of optional UIM coverage bound all other insureds on the policy and (2) failing to treat the addition of a second vehicle and a second named insured as a "change" to the policy pursuant to section 38-77-350(C) of the South Carolina Code (2002). We affirm pursuant to Rule 220(b), SCACR.

1. As to whether the trial court erred in holding that Progressive was required to offer Corey UIM coverage when Progressive altered his status to a named insured on the insurance policy, we affirm. *See McDonald v. S.C. Farm Bureau Ins. Co.*, 336 S.C. 120, 124, 518 S.E.2d 624, 626 (Ct. App. 1999) ("This court's primary function in interpreting a statute is to ascertain the intent of the General Assembly. A statute must receive a practical and reasonable interpretation consonant with the 'design' of the legislature." (citation omitted)); *id.* ("Sections 38-77-160 [of the South Carolina Code (2002)] and 38-77-350 [of the South Carolina Code (2002 & Supp. 2013)] cover the same subject matter, i.e., the offer of optional insurance coverages for automobiles, and, therefore, must be construed together and as explanatory of each other.") (quotation marks omitted); § 38-77-160 ("[Automobile insurance carriers] shall . . . offer, at the option of the insured, underinsured motorist coverage up to the limits of the insured liability coverage to provide coverage in the event that damages are sustained in excess of the liability limits carried by an at-fault insured or underinsured motorist or in excess of any damages cap or limitation imposed by statute."); *McDonald*, 336 S.C. at 123, 518 S.E.2d at 625 ("If the insurer fails to make a meaningful offer of UIM coverage to the insured, the policy will be reformed, by operation of law, to include UIM coverage up to the limits of liability insurance carried by the insured."); § 38-77-350(A)-(C) (2002 & Supp. 2013) ("(A) The director or his designee shall approve a form that automobile insurers shall use in offering optional coverages required to be offered pursuant to law to applicants for automobile insurance policies. This form must be used by insurers for all new applicants. . . . (B) If this form is signed by the named insured, after it has been completed by an insurance producer or a representative of the insurer, it is conclusively presumed that there was an informed, knowing selection of coverage and neither the insurance company nor an insurance agent is liable to the named insured or another insured under the policy for the insured's failure to purchase optional coverage or higher limits. (C) An automobile insurer is not required to make a new offer of coverage on any automobile insurance

policy which renews, extends, changes, supersedes, or replaces an existing policy."); *McDonald*, 336 S.C. at 124, 518 S.E.2d at 626 (finding that "[c]learly, the legislature intended for insurers to afford *all named insured* the opportunity to accept or reject UIM coverage.  In using the term 'new applicant,' the legislature simply distinguished between those who had never had an opportunity to reject UIM coverage and others, such as insureds renewing policies, who previously had made informed decisions about UIM coverage") (emphasis added); *see also Gov't Emps. Ins. Co. v. Draine*, 389 S.C. 586, 594, 698 S.E.2d 866, 870 (Ct. App. 2010) (confirming *McDonald*'s holding that the term "new applicant" means one who has never had the opportunity to reject UIM coverage).

2. As to whether the trial court erred in failing to recognize Progressive was not required to offer Corey UIM coverage pursuant to section 38-77-350(C) because Corey's altered status was merely a change in the insurance policy, we affirm. *See McDonald*, 336 S.C. at 125, 518 S.E.2d at 626 ("'If [section] 38-77-350(C) were interpreted to relieve [carrier] of the general requirement of offering [the insured] underinsured motorist coverage up to the liability limits of the policy, it would amount to an absolute repeal of § 38-77-160, which mandates that an automobile insurer offer underinsured motorist coverage up to the limits of the insured's liability coverage.  Where [s]ection 38-77-350(C) states the insured is not required to make a new offer, it clearly envisions the circumstances where the insurer has already made an old offer.'" (alterations by court) (quoting *Ackerman v. Travelers Indem. Co.*, 318 S.C. 137, 142, 456 S.E.2d 408, 410 (Ct. App. 1995))).

**AFFIRMED.**

**WILLIAMS, KONDUROS, and LOCKEMY, JJ., concur.**